HANNAH DUBOIS AND ANOTHER, ADMINISTRATORS, &C., APPELLANTS, v. THE CITY OF POUGHKEEPSIE, RESPONDENT, IMPLEADED, &C.

*Charter of Poughkeepsie, chapter 497 of 1874, as amended by chapter 215 of 1876—power of city to sell for taxes under—as to notice to be given to mortgagees—it may sell for State and county taxes—rate of interest it may collect—within what time sale must be made—fees of city attorney for selling, how fixed.*

Under the amended charter of the city of Poughkeepsie, the purchasers at tax sales made thereunder are not required to serve notices thereof upon those holding mortgages upon the premises, unless the statement required by chapter 387 of 1840, as amended by chapter 266 of 1844, has been filed.

Under the amended charter, the city has power to sell lands for unpaid State and county taxes, as well as for unpaid city taxes, and is entitled to collect interest at the rate of one per cent. per month upon all of the said taxes.

Under section 8 of chapter 497 of 1874, providing that the city attorney, shall, upon making a sale, have "such fee as the common council may fix," the common council may fix the attorneys' fees for all future sales in one resolution.

The charter provided that every tax should be a lien upon the real estate charged with the payment thereof for two years, from the signing of the warrant for its collection.

*Held*, that the sale must be made before the expiration of the two years, and that it was not enough that all the preliminary proceedings had been taken,

and the advertisement commenced within that period, where the sale took place a few days after the expiration thereof.

APPEAL from a judgment entered upon the trial of this action by the court without a jury, directing the foreclosure of a mortgage owned by the plaintiff, and determining and establishing the validity of certain tax sales of the mortgaged premises, and establishing the rights and interest of the defendant, the city of Poughkeepsie, in the premises affected thereby.

The city of Poughkeepsie claimed to be entitled to the possession of the mortgaged premises, under four alleged sales for unpaid city, county and State taxes, one made on January 18, 1877, for $50.39, one on December 27, 1877, for $55.98, one on January 3, 1879, for $53.50, and one on January 21, 1880, for $52.02.

These amounts were made up as follows:

|            | City Taxes. | County and State Taxes. | Penalty and Interest. | Expenses of Sale. |
| ---------- | ----------- | ----------------------- | --------------------- | ----------------- |
| 1st sale,  | $8.18       | $3.80                   | $3.43                 | $35.00            |
| 2d "       | 6.70        | 3.80                    | 2.98                  | 42.50             |
| 3d "       | 6.56        | 3.60                    | 2.02                  | 41.32             |
| 4th "      | 6.05        | 2.82                    | 1.83                  | 41.32             |

On each sale the property was struck off to the city " for a term of fifty years, which was the shortest period for which any person at the time of such sale offered to take the said premises and pay the amount " for which the sale was made. No declaration of sale had been issued thereon.

It was found by the court that each sale was made for an amount in excess of the sum legally due at the time of sale, and also that the first, third and fourth sales were in part for, and were void as to, taxes which had ceased to be a lien at the time when the sales were had, as follows:

|           | For taxes not a lien. | Excessive fees. |        |
| --------- | --------------------- | --------------- | ------ |
| 1st sale, | $4.24                 |                 | $4.24  |
| 2d "      |                       | $3.81           | 3.81   |
| 3d "      | 3.79                  | 3.67            | 7.46   |
| 4th "     | 2.95                  | 3.08            | 6.03   |

but the excesses were held not to affect the purchaser's rights under the sales.

It was found by the judge that on the 16th day of August, 1875, the then common council of the city, by resolution, adopted orders for the sale by the then city attorney of the said city, of three parcels of land in the said city, for alleged unpaid city taxes or assessments, and by the same resolution provided as follows:

" The common council fixes the fee of the attorney at ten dollars for each parcel, in case of payment before sale, and at twenty dollars for each parcel that shall be actually sold."

That the said city attorney went out of office on the 31st day of December, 1875, and that the said office has since been filled and held by other persons.

That no action had since been had by any common council of the said city as to fixing a fee to the city attorney of said city in cases of sales for taxes.

He also found, among other conclusions of law that the first, third, and fourth tax sales were, and are each void as to county and State taxes, by reason of each having been made for an amount which included, and was in part made up of county and State taxes, with interest and percentage thereon, which, in each case, had ceased to be a lien at the time of sale.

That the second, third, and fourth of said sales were each made for an amount which included excessive and illegal publication fees.

That the city attorney's fee of $20 was duly fixed for each of said sales.

That the city of Poughkeepsie was not required to notify the plaintiffs of either of the said sales.

That the city of Poughkeepsie was entitled to be paid, from the proceeds of the sale of the premises in this action, and next after the payment of taxes heretofore directed to be made by the referee, but prior to the plaintiffs' costs, the amounts due on the said sales after deducting the aforesaid illegal charges.

*O. D. M. Baker,* for the appellants. Under section 8 of chapter 497 of 1874, each sale is a separate proceeding, and the charter contemplates that the council ordering the sale shall, as a

part of the proceeding, definitely fix the fee of the city attorney in that case. The order of August 16, 1875, is no more an authority for the $20 fee in these cases than it is for making these sales.

On the findings as they stand, each sale is void, for having been made for an amount in excess of the sum lawfully due at the time of sale. (*Atkins* v. *Kernan*, 20 Wend. 241–249; *Sharp* v. *Speir*, 4 Hill, 76; *Hubbell* v. *Weldon*, H. & D. Supp., 139–145; *Bunner* v. *Eastman*, 50 Barb., 639; *Cruger* v. *Dougherty*, 43 N. Y., 107–121; *Ritter* v. *Worth*, 1 N. Y. S. C., 406; *Williams* v. *Payton*, 4 Wheat., 77; *Thatcher* v. *Powell*, 6 Id., 119; *Stead* v. *Course*, 4 Cranch, 403; *Mason* v. *Fearson*, 9 How. U. S., 248; *McQuesten* v. *Swopes*, 12 Kan., 32; *Hardenburgh* v. *Kidd*, 10 Cal., 402; *Bucknall* v. *Story*, 36 Cal., 67; *Treadwell* v. *Patterson*, 51 Cal., 637 [1877]; Cooley on Taxation, 344. See Blackwell's Tax Titles, 437, *et seq.*)

*William Morgan Lee* and *William J. Thorn*, for the respondent.

DYKMAN, J.:

The statutes involved in this case have received a most careful examination, and we find that they received a proper construction and application by the trial court, and the judgment is affirmed with costs, on the opinion of the Special Term, as follows:

"BARNARD, J.:—No notice is required to be served upon mortgagees by the purchasers at the tax sales, under section 13 of title 5 of the charter of the city of Poughkeepsie. Chapter 387 of the Laws of 1840 was amended by chapter 266 of the Laws of 1844. By this amendment only such mortgagees were required to be notified as should file a statement with the comptroller of the amount of the mortgage, and of the place where the premises were situated. The city charter which requires a notice according to the provision of the law of 1840, only requires notice when by that law, as amended in 1844, notice is provided, although the charter is silent as to the amendment. The law of 1840 and the amendment of 1844 must be read together, and as passed entirely in 1840. No such notice by the mortgagees was filed in this case. The city has power to sell lands for unpaid county and State taxes. The

original charter did not give this power. It made the city treasurer collector of these taxes, and gave for that purpose the powers and made him subject to the duties of town collectors, as provided by law. It would have been the treasurer's duty, if the charter so remained, to return delinquents to the county treasurer, and for that official to return the same to the comptroller of the State. By chapter 215, Laws of 1876, the charter was amended, so that it was provided that the city treasurer should collect city, county and State taxes; that every tax should be a lien for two years after the signing of the warrant for its collection, and that the treasurer should collect city, county and State taxes without any percentage for collection during thirty days, upon all unpaid taxes; after sixty days, one per cent. per month was added. Section 8 of title 5 of the city charter was amended, and by the amendment, provided as follows: "And if any tax or assessment or any part thereof, for city or for county and State purposes, or for either city or county and State purposes, shall be returned as unpaid by any officer authorized to collect the same, the common council of said city shall direct the city attorney to advertise and sell such real estate."

The city treasurer is required by the charter to make oath to all unpaid taxes, and file the same with the city chamberlain. The city chamberlain is the clerk of the common council. The meaning of this amendment is obvious. The city was to collect all taxes, and was made the State agent to sell the lands of the delinquents. All laws conflicting with this purpose are impliedly repealed. There is a return to the common council, and upon this the common council must act. There is no further need of a return to the comptroller, as he cannot sell. I think the effect of the amendment was to make the interest at the rate of one per cent. per month run on all taxes, as well city as county and State. The city collects the county and State tax without reward, and it is just that the city should receive such interest in excess of the legal rate as is collected of delinquents. There is, therefore, no excess of interest charged. The common council may fix the attorney's fees for all future sales in one resolution. The resolution of August, 1875, was designed to have that effect, and has been so considered in all subsequent sales. The overcharges for printers' fees do not

vitiate the sales. The tax was good. The printers' fees and the attorneys' fees are mere incidents of collection, and can be remedied by tender of the tax and legal fees. The plaintiff has the right to deduct the overcharges for printing, and that must be done. The attorney had the right to sell separately for as many defaults as existed. He was, it is true, bound to do so "immediately after the return of any tax as unpaid;" but the lien continued for two years from the date of the warrant, and it does not lie with the delinquent taxpayers to avoid a sale by reason of this neglect. I think the sales made after the expiration of the two years are void. The advertisements had been commenced within the two years, but the sales were made a few days after the period of two years had expired. It is claimed by the city that the lien is preserved if the proceedings are commenced within the two years, and the sale made afterwards. This view does not seem to be sustained by authority. The mechanic's lien law provided for a lien for one year. It was held that when an honest effort was made to procure a judgment under it which was not obtained in the year, it did not extend the lien beyond the year. (*Freeman* v. *Cram*, 3 N. Y., 305; *Benton* v. *Wickwire*, 54 Id., 226; *Em. Ind. Sav. Bank* v. *Goldman*, 75 N. Y., 127.) All amounts for county and state taxes levied before the amendment to the charter in 1876, when the sales were made within the time of the lien, are to be deducted, otherwise those sales are good.

The title to the city being paramount to the mortgage, the city is not a proper party to the foreclosure suit. (75 N. Y., 127.) No objection is made upon that account, but, on the contrary, a decision upon the validity of its claim is asked herein; the decree must therefore provide that upon payment to the city of the amounts due for taxes and expenses as herein provided, the claim of the city upon the premises for taxes and sales prior to the judgment be absolutely destroyed and extinguished. The attorney for the city is also entitled to costs out of the fund."

GILBERT, J., concurred; BARNARD, P. J., not sitting.

Judgment affirmed, with costs.